## THORN v. HELMER.*

### December, 1865.

In an action for deceit whereby the plaintiff was induced to abandon his professional practice in one place and remove to another place, and enter into partnership with the defendant, it is competent for the plaintiff to testify as to the value and growing character of the abandoned practice, not to affect the damages, but to show his reliance upon the defendant's representations.†

* Compare Smith v. Countryman, 30 N. Y. 655.

† See, as to the admissibility of opinions on questions of damages,

Whether he believed the defendant's representations is a question of fact, upon which he may testify.

Evidence as to the amount of professional business done by both plaintiff and defendant during the year they practiced together as partners, is admissible to show presumptively that the defendant greatly misrepresented his practice during the preceding year.

It is competent to show the worth of a house and lot for which the plaintiff paid far more than it was worth, as tending to show the plaintiff's belief in the defendant's representations as to the amount of his practice.

It is also admissible as affecting the question of damages.

The testimony of a physician, practicing in the place, as to his knowledge of the number of cases of fracture existing at one time in such place, is competent to show the falsity of the defendant's representations as to the number of such cases that he had had at one time.

An agreement with the defendant at the end of the first year of the partnership, to dissolve the partnership and allow the defendant to continue in practice in the place, in no way released the defendant from any liability he was under for his false representations.

Samuel S. Thorn sued Jacob H. Helmer, in the supreme court, for deceit, and alleged in his complaint that defendant, on and prior to September 8, 1857, falsely represented to him that his professional business then was, and had been, worth five thousand dollars per year, and could be easily increased so as to be worth seven thousand dollars per year; that his cases of surgery alone were sufficient to support his family; that for a long time he hand on had, on an average, eight cases of fracture; that his extensive practice obliged him to keep four horses; and to employ Dr. Hill, his former partner, to practice for him at an annual salary. That thereby defendant induced plaintiff to abandon his practice in physic in Milwaukie, Wis., and to remove to Lockport, N. Y., and to enter into a contract, in writing, with defendant, to purchase his house for seven thousand dollars (alleged to be some one thousand five hundred dollars above its actual value), and to enter into partner-

Taylor *v.* Bradley, p. 363 of this volume, and 3 *Abb. N. Y. Dig.* 2 ed. 79, where the cases are collected from 'which the general rule may be deduced, that where a witness is competent, and states the facts, his conclusion or opinion as to the pecuniary injury to property having a market value, is admissible.

* See King *v.* Fitch, vol. 2 of this series, p. 508, and note.

ship with him for the term of two years; defendant to be at
liberty to withdraw from the firm at the end of one year, pro-
vided he withdrew from the practice at that place. That for
the year plaintiff practiced with defendant, their charges for
professional services were about two thousand two hundred and
fifty dollars, worth from one thousand dollars to one thousand
two hundred dollars; and their surgical business only worth
about two hundred and fifty dollars.

Upon substantially this state of facts, the jury found that
plaintiff had sustained damage in the sum of one thousand
dollars.

*The supreme court,* at general term, denied a new trial, and
judgment was rendered for plaintiff. Defendant appealed.

*S. E. Church,* for defendant, appellant.

*Lyman Tremain,* for plaintiff, respondent.

WRIGHT, J. [After stating the facts.]—Any questions open
for review in this court arise upon exceptions to the ad-
mission of evidence, and to the refusal of a motion for a non-
suit. These will be noticed in the order in which they arose
on the trial.

1. The plaintiff himself, as a witness, was inquired of and
allowed to testify as to the value of his professional business at
Milwaukie, at the time of his entering into copartnership with
the defendant, and as to its being a growing business. I do
not regard this as error. It may be conceded that the evidence
was inadmissible on the question of damages; and so the
judge, unsolicited, instructed the jury. But, I think, it was
competent in another point of view. To make out the plain-
tiff's case, it was necessary to prove that he relied upon the
defendant's representations; and this could be done by
direct evidence, or by circumstances tending to show such reli-
ance. In this latter class the proof falls. The defendant
made certain representations as to the amount and value of his
practice at Lockport. The plaintiff was engaged in a practice
at Milwaukie, profitable and increasing. Would not such a

fact have a direct and strong tendency to induce the belief that such practice and future prospects would not be given up without the plaintiff was convinced that his prospects at Lockport was very advantageous ?  Would he be likely to abandon his practice at Milwaukie, if it were a valuable and increasing one, for the purpose of going to Lockport, unless he believed in the representations made by the defendant, and that his position at Lockport, assuming the representations to be true, would be beneficial to him ?  It was proof tending to make out that a strong motive must have been present to induce such removal.  A reliance on the defendant's representations would furnish such a motive.  Any evidence, therefore, tending to show that a strong motive must naturally have existed to induce this removal, was proper.

2. The plaintiff, as a witness, after giving evidence showing that the defendant, prior to the execution of the contract, made to him the representations set forth in the complaint, was asked the question : " Did you believe the representations so made to you by the defendant ? "  The witness answered, under objection, that he did believe them.  The ruling here was not erroneous.  The case of Seymour v. Wilson, 14 N. Y. 567, is decisive upon the point.  There it was held that it was competent to inquire of an assignor, whether, in making the assignment, he intended to delay or defraud his creditors.  But I quite concur with the supreme court that, on principle, the testimony was admissible.  The plaintiff was a competent witness to testify to any relevant fact in the case within his knowledge.  The question whether he believed the representations of the defendant was one of fact, and his answer as to the fact, directly, was no more objectionable than proof by him of circumstances tending to show it.  The impracticability of contradicting a witness when he is allowed to testify to the operation of his own mind, forms no objection to the admissibility of such testimony.  It is to be received, and the weight to be given to it is a question for the jury.

3. Evidence was admitted as to the amount of professional business done by the plaintiff and defendant pursuant to the contract, during the year they were together, and also as to the number of horses required to be kept by them for the

transaction of such business. It was offered and admitted as having a tendency to show the amount of business done by the defendant the year immediately preceding, and at the time of making the contract. The defendant represented that his business was worth five thousand dollars per year, that it then was, and had been worth that sum, and that he was obliged to keep four horses to do it. If that were true, the presumption naturally would be that it would continue, at least, about that sum in the succeeding year. There was no such change of circumstances shown as to render it probable that a great diminution of business would ensue. I think the evidence was competent and proper for the purpose for which it was offered and received. It showed the existence of a circumstance from which it might naturally and justly be inferred that the practice of the defendant the year preceding had not been as great as represented by him, nor anything like it.

4. A witness on behalf of the plaintiff was asked this question : "What, in your opinion, were these premises (the house and office sold to plaintiff by defendant) worth on September 8, 1857 ?" This was objected to, on the ground of the immateriality of the evidence called for by the question ; but the objection was overruled, and evidence given of the actual value of the premises at the time of entering into the contract. This was not error. The complaint averred that, at the time of entering into the contract, the house was not worth more than five thousand five hundred dollars ; that for the purpose of inducing the plaintiff to purchase the house and office at a large price, and more than their value, and to enter into partnership with the defendant, the latter made the representations as to the extent and value of his practice, and that the plaintiff, trusting in the representations, and being deceived thereby, "did enter into an agreement with said Helmer, in writing, wherein plaintiff agreed to purchase said house and lot of said Helmer, for seven thousand dollars," and to enter into partnership with him. It was competent for the purpose of sustaining these allegations, to show exactly what the house was worth, and that the plaintiff was induced to buy it at a much larger sum, by the representations of the defendant as to the amount of his practice ; for the purchase of the house and

the entry into partnership were to be concurrent acts—substantially one transaction. They were, in fact, the subject of a single contract. In the court below, the competency of the evidence was placed upon grounds similar to those justifying the admission of proof of the plaintiff's business and prospects at Milwaukie, viz : its tendency to show that the plaintiff believed in the representations of the defendant as to the extent and value of his professional business. It may stand on that ground, for it may be pertinently asked, would the plaintiff have given the enhanced price, unless he had believed the representations ? The giving of such price manifestly tends to show that he did believe them. But we are of the opinion that the evidence was competent and proper on the question of damages. The plaintiff was induced, by the fraudulent representations of the defendant as to the extent and value of his professional business, to purchase his house and office for confessedly more than their value, and form a business connection with him, to continue at the furthest but two years, and at the option of defendant it might terminate in one year. The two things formed the subject of one contract, and the plaintiff was induced to enter into it by the fraud of the defendant. It was parcel of the contract that he was to pay a sum for the defendant's premises and place of business, much greater than their real value, not, as was said by the court below, as a part of the price paid for the business connection, for there would have been no such connection had it not been for the fraud practiced by the defendant ; but, as will be appreciated by every medical practitioner, for the benefit and advantage expected to result from occupying the office and place of business of his predecessor in the profession. And this disposition of his place of business for a sum over its real value, was the precise advantage sought and gained by the defendant by his fraudulent representations as to the amount of business he was and had been doing. We are, therefore, of the opinion that, on the question of damages, it was competent for the jury to consider the price paid for the defendant's premises over their real value. The rule is, that the party injured by fraud in the making of a contract is entitled, by a recovery, to be placed in a situation equally beneficial, as to the subject of the contract,

as he was induced by the fraud of the defendant to believe he would be, and in reference to which he entered into the contract.

5. Dr. McCullum, who had been a practicing physician and surgeon in the village of Lockport for fourteen years, after testifying that he was acquainted with the defendant and his "ride" about as much as one physician generally is with that of another in the same village, that the population of Lockport was between 8,000 and 9,000, and that there were twelve or fourteen physicians in the village and its vicinity, was asked the question : "How many cases of fracture have you known to exist in the village of Lockport and its vicinity at any one time ?" The defendant's ground of objection to the question, and the evidence called for thereby, was its irrelevancy and immateriality; which objection was overruled, and the witness answered that the greatest number of fractures he had known to exist at any one time in Lockport was three or four. I do not think this error. The defendant had represented that he had had on hand, on an average, eight cases of fracture for a long time. The truth of this representation might be disproved by circumstantial as well as by direct evidence. Proof that the whole number of cases of fracture existing in Lockport and its vicinity at any one time was not eight, would show the falsity of the representation. I think it was competent to inquire of Dr. McCullum, who had practiced medicine and surgery at Lockport for fourteen years, how many such cases altogether he had known to exist at one time. He possessed a general knowledge of the subject, and the testimony was competent, as far as it went, as tending to show the number of fractures there were altogether. It was no objection to its competency that the other physicians of the village were not offered to be called to the same fact. By showing that all the cases of fracture did not amount to eight, the representations of the defendant would seem to be false.

6. The motion for a nonsuit was properly overruled. All that was required of the plaintiff to entitle him to recover was to show the fraud of the defendant, that he was deceived and imposed upon by such fraud, and that he had sustained damage thereby. These were questions for the jury. It is not claimed, however, that upon the merits the case should have been with-

held from the jury. The ground taken on the trial, and now, is that the plaintiff, after a knowledge of all the facts respecting the defendant's professional business, ratified the contract between them, and waived any pretended fraud which induced him to enter into it. It appeared that the parties were one year in business together, at the end of which time the connection was dissolved, and an agreement, in writing, was attached to the original contract, allowing the defendant to practice his profession in Lockport, if he chose. The operation of this voluntary modification of the contract of September 8, 1857, was not to preclude the plaintiff from suing for the fraud practiced upon him, by which he was induced to enter into such contract. The original agreement was that the partnership was to continue two years, with liberty to defendant to withdraw at the end of one year, provided he withdrew entirely from practice at Lockport, and the subsequent agreement merely took off the restriction from the defendant as to his practicing at Lockport. This the plaintiff had a right to do without in any manner compromising his action for the fraud. This second agreement in no way released the defendant from any liability that he was under in regard to his false representations. The fact that when the partnership was dissolved, the plaintiff made no claim to have been defrauded in the contract of September, 1857, but went on in its fulfillment on his part, has no significance. It was not shown that he had then discovered the fraud; but if it had been, and he was silent on the subject, it could not have altered his legal rights. A party who has been drawn into executing a contract by fraudulent representations, may affirm the contract after the discovery of the fraud, and, notwithstanding such affirmance, sue for the fraud. The plaintiff had the right to go on, fulfill his contract, and recover damages for the fraud practiced upon him. By doing so, he waived no legal right.

Upon the whole, I am of the opinion that none of the exceptions are well taken, and that the judgment should be affirmed.

All the judges concurred, except BROWN, J., who dissented, and CAMPBELL, J., absent.

Judgment affirmed, with costs.